# EXHIBIT A

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

– – –

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

IN RE FONTEM US, INC.,          )
CONSUMER CLASS ACTION           )
LITIGATION:                     )   SACV-15-01026-JVS
--------------------------------)
                                    Consolidated with:

                                    SACV-15-02018-JVS


REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

September 15, 2016


SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

Exhibit A, Page 2

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiffs:

 3   MARK N. TODZO
     LEXINGTON LAW GROUP, LLG(
 4   503 Divisadero Street
     San Francisco, CA  94117-2212
 5   (415) 913-7800

 6   JERUSALEM F. BELIGAN
     BISNAR CHASE
 7   1301 Dove Street, Suite 120
     Newport Beach, CA  92660
 8   (949) 752-2999

 9   For the Defendants:

10   ALLAN GABRIEL
     DYKEMA GOSSETT, LLP
11   333 South Grand Avenue, Suite 2100
     Los Angeles, CA  90071
12   (213) 457-1706

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

| | 1 | SANTA ANA, CALIFORNIA; MONDAY, SEPTEMBER 15, 2016; 9:59 A.M. |
|---|---|---|
| 09:59 | 2 | THE COURT:  Item No. 2, SACV-15-01026-JVS, In Re |
| 09:59 | 3 | Fontem Consumer Class Action Litigation consolidated with |
| 09:59 | 4 | SACV-15-2018-JVS. |
| 09:59 | 5 | Counsel, please state your appearances for the |
| 09:59 | 6 | record. |
| 09:59 | 7 | MR. GABRIEL:  Good morning, Your Honor.  Allan |
| 09:59 | 8 | Gabriel representing all of the defendants. |
| 10:00 | 9 | MR. TODZO:  Good morning, Your Honor.  Mark Todzo |
| 10:00 | 10 | representing the plaintiffs. |
| 10:00 | 11 | MR. BELIGAN:  Good morning, Your Honor.  Jerusalem |
| 10:00 | 12 | Beligan on behalf of the plaintiffs. |
| 10:00 | 13 | THE COURT:  Good morning. |
| 10:00 | 14 | I trust you have all had a chance to review the |
| 10:00 | 15 | tentative. |
| 10:00 | 16 | MR. TODZO:  Yes, Your Honor. |
| 10:00 | 17 | MR. GABRIEL:  Yes, Your Honor. |
| 10:00 | 18 | THE COURT:  Who is going to argue on behalf of the |
| 10:00 | 19 | plaintiffs? |
| 10:00 | 20 | MR. TODZO:  I will. |
| 10:00 | 21 | THE COURT:  Okay.  Mr. Todzo. |
| 10:00 | 22 | MR. TODZO:  Thank you, Your Honor. |
| 10:00 | 23 | Thank you for the tentative.  I think that gives |
| 10:00 | 24 | us a lot of interesting questions to discuss today.  The |
| 10:00 | 25 | first few things I would like to discuss are things that |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 10:00 | 1 | really weren't brought out in the papers, but one thing that |
| 10:00 | 2 | kind of struck me when I looked at the end result of your |
| 10:00 | 3 | tentative and also at the first footnote of your |
| 10:01 | 4 | tentative -- |
| 10:01 | 5 | THE COURT:  Are you telling me you now have |
| 10:01 | 6 | arguments that aren't reflected in your papers? |
| 10:01 | 7 | MR. TODZO:  I have two, yes.  One is timing |
| 10:01 | 8 | related, and one relates to the opinion that Judge Carter |
| 10:01 | 9 | issued after all of briefing came down.  And the remainder |
| 10:01 | 10 | of my arguments just directly relate to the specific issues. |
| 10:01 | 11 | With respect to the timing, Your Honor cites the |
| 10:01 | 12 | effective date at Footnote 1 on page two of the tentative. |
| 10:01 | 13 | And the effective date for the particular FDA requirement |
| 10:01 | 14 | that Your Honor found preempted is May of 2018.  And |
| 10:01 | 15 | that raises an interesting question, which is can an |
| 10:01 | 16 | ineffective -- because it's ineffective today -- can an |
| 10:01 | 17 | ineffective federal requirement preempt a state law |
| 10:01 | 18 | today? |
| 10:01 | 19 | When I went back before -- and there is no |
| 10:01 | 20 | specific definition of a requirement in the federal act, but |
| 10:01 | 21 | "requirement" is a common usage term.  When I looked at the |
| 10:02 | 22 | definitions of "requirement," they are all present.  They |
| 10:02 | 23 | are all present tense:  that which is required, a thing that |
| 10:02 | 24 | is demanded or obligatory.  So those all imply that there |
| 10:02 | 25 | has to be a present aspect to the particular federal |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit A, Page 5

10:02  1    requirement.  And the fact that it doesn't take effect for

10:02  2    two years, it seems as though this is almost like an

10:02  3    advisory type opinion because -- frankly, it's actually very

10:02  4    good to know Your Honor's position, that when the

10:02  5    requirement takes effect in 2018 that it would be preempted

10:02  6    because that may affect certain remedies that would be

10:02  7    available.  That's the first issue.

10:02  8          I think it's actually quite similar to the way

10:02  9    Your Honor looked at this issue -- or at least the primary

10:02  10   jurisdiction issue during the first hearing, which was

10:03  11   saying, look, it's premature because the rule hasn't been

10:03  12   finalized.  Well, now the rule has been finalized, but the

10:03  13   requirement is defective, so there is definitely some

10:03  14   tension there.

10:03  15         The second timing-related issue is with respect to

10:03  16   sort of the conclusion at the end of the tentative, which is

10:03  17   dismissing all of the claims other than the Prop 65-related

10:03  18   claim with prejudice.  Now, the problem there is that those

10:03  19   claims -- all those other claims are claims for damages,

10:03  20   injunctive relief -- well, damages, injunctive relief, but

10:03  21   also restitution.

10:03  22         The damages and restitutionary portions of those

10:03  23   claims all relate back.  Most of them have a four-year

10:03  24   statute of limitations.  So the limitations period actually

10:03  25   begins in 2011.  So there is a period from 2011 until --

10:03   1    let's assume for a second that the ineffective requirement

10:04   2    is essentially preempted as of its publication date.  So at

10:04   3    a minimum, you have a period from 2011 up through May 10 I

10:04   4    believe of 2016 when the rule was finalized during which

10:04   5    there was no federal requirement in place.

10:04   6          I think again this sort of relates to when Your

10:04   7    Honor looked at the issue of primary jurisdiction back

10:04   8    before the FDA even had jurisdiction, before the TCA covered

10:04   9    the particular products that are at issue in this case.

10:04  10    There could be no primary jurisdiction because there was no

10:04  11    jurisdiction.

10:04  12          THE COURT:  Well, certainly not on the basis of

10:04  13    regulations than haven't gone into effect.  That's your

10:04  14    point.  Yes.

10:04  15          MR. TODZO:  Exactly.  So now only as a result of

10:04  16    the regulations having taken effect -- only as a result of

10:04  17    that does the Tobacco Control Act now cover electronic

10:04  18    cigarette products.  But it's undisputed that prior to

10:05  19    May 2016 those products were not regulated at all by the

10:05  20    federal government.  That's undisputed.  So it was only as

10:05  21    of May 2016 when the reg was finalized that now all of

10:05  22    a sudden there is actually TCA regulation for those

10:05  23    products; and, therefore, now, you can apply the preemption

10:05  24    provision.

10:05  25          But applying the preemption provision to a claim

| | | |
|---|---|---|
| 10:05 | 1 | that arose in 2011 when the statute didn't apply to those |
| 10:05 | 2 | claims, that's a retroactive application.  There is nothing |
| 10:05 | 3 | in the congressional record.  There is nothing in the Act |
| 10:05 | 4 | itself that says -- or certainly nothing in the new rule |
| 10:05 | 5 | that says not only do we intend for this rule to be |
| 10:05 | 6 | preempted -- as I will get to later, the FDA doesn't |
| 10:05 | 7 | say -- |
| 10:05 | 8 | THE COURT:  Well, they don't say. |
| 10:05 | 9 | MR. TODZO:  Well, we will get there.  I mean, |
| 10:05 | 10 | I think their statement that no law that was presented to |
| 10:06 | 11 | them would be preempted by the rule is a statement that |
| 10:06 | 12 | there is no preemption.  Like I say, I will get to that in a |
| 10:06 | 13 | minute. |
| 10:06 | 14 | With respect to the retroactive application, there |
| 10:06 | 15 | is nothing in their rule that says that rule should be |
| 10:06 | 16 | retroactively applied.  In fact, it's not even applied |
| 10:06 | 17 | today.  It's applied two years in the future. |
| 10:06 | 18 | So I think at a minimum assuming you reject |
| 10:06 | 19 | everything else I'm going to say here forward -- I think at |
| 10:06 | 20 | a minimum Your Honor has to adjust the final conclusion and |
| 10:06 | 21 | determine that the preemption can occur only from -- you |
| 10:06 | 22 | know, either the date the rule was finalized or the date |
| 10:06 | 23 | that the requirement takes effect.  It's one of those two |
| 10:06 | 24 | dates.  That can't possibly be preemption dating back prior |
| 10:06 | 25 | to that. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit A, Page 8

| | | |
|---|---|---|
| 10:06 | 1 | Even if Your Honor were to think that there's a |
| 10:06 | 2 | possibility that there could be retroactive application of |
| 10:07 | 3 | the preemption provision, it's the defendants' burden to |
| 10:07 | 4 | prove that.  I think one of the basic tenets of preemption |
| 10:07 | 5 | law is that absent the clear and manifest intent of Congress |
| 10:07 | 6 | there is no preemption of state laws.  That's especially |
| 10:07 | 7 | true whereas here we are talking about a provision of a |
| 10:07 | 8 | state law that covers health and safety.  So that's where |
| 10:07 | 9 | that strong presumption against preemption applies. |
| 10:07 | 10 | In the face of a strong presumption against |
| 10:07 | 11 | preemption, you have got a law that at best takes effect in |
| 10:07 | 12 | May of 2016, possibly May of 2018.  So, again, there is |
| 10:07 | 13 | nothing there that could say that it could preempt something |
| 10:07 | 14 | going back as far as 2011 or even 2015 or even April of |
| 10:07 | 15 | 2016. |
| 10:07 | 16 | One of the reasons why that gap between 2016 and |
| 10:08 | 17 | 2018 could be potentially outcome determinative here is |
| 10:08 | 18 | there have been no less than five lawsuits filed challenging |
| 10:08 | 19 | the regs already.  I know that's not in the record.  If Your |
| 10:08 | 20 | Honor would like, I do have a supplemental request for |
| 10:08 | 21 | judicial notice that just gives you the docket numbers so |
| 10:08 | 22 | you will see there are five different cases challenging the |
| 10:08 | 23 | enactment of these regs. |
| 10:08 | 24 | If at any time between today or May of 2016 and |
| 10:08 | 25 | May of 2018 the regs are either kicked out or if some aspect |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:08 | 1 | of those are kicked out, then the requirement will never |
| 10:08 | 2 | take effect.  And if a requirement never takes effect, can |
| 10:08 | 3 | that then have a preemptive effect?  That's another |
| 10:08 | 4 | interesting question, which I think the best way to |
| 10:08 | 5 | determine that is even if Your Honor sticks with the idea |
| 10:09 | 6 | that the reg is preempted, it would only be preempted from |
| 10:09 | 7 | May of 2018 forward. |
| 10:09 | 8 | So those are the two timing-related issues I |
| 10:09 | 9 | wanted to touch on. |
| 10:09 | 10 | With respect to Judge Carter's ruling, I apologize |
| 10:09 | 11 | that we got it to you so late.  Don't know if you have had |
| 10:09 | 12 | an opportunity to look at it, but Judge Carter in the Five |
| 10:09 | 13 | Palms case -- |
| 10:09 | 14 | THE COURT:  Well, he took a fairly narrow view of |
| 10:09 | 15 | what labeling related to. |
| 10:09 | 16 | MR. TODZO:  That's exactly right.  I found that |
| 10:09 | 17 | sort of interesting. |
| 10:09 | 18 | THE COURT:  I'm not sure it's supported by the |
| 10:09 | 19 | statute, however. |
| 10:09 | 20 | MR. TODZO:  Your Honor, I have looked at it with |
| 10:09 | 21 | the same interest as to where he was finding that.  He |
| 10:09 | 22 | certainly doesn't describe exactly where he found it, but |
| 10:09 | 23 | there is some textual support in the statute.  What I think |
| 10:09 | 24 | you have to do is you have to compare -- so you know how the |
| 10:10 | 25 | TCA -- it's called preservation of state authority.  That |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:10   1   provision has three subdivisions.  One is the initial
10:10   2   preservation of state authority provision.  Then it has the
10:10   3   preemption provision.  And then it has the exception from
10:10   4   preemption provision.
10:10   5          So when you look at the initial preservation
10:10   6   language -- this is 21 USC 387p(a)(1).  It says:  "Except
10:10   7   as provided in paragraph 2(a)" -- that's the presumption
10:10   8   provision -- "nothing in the subchapter or rules promulgated
10:10   9   under the subchapter shall be construed to limit."  So it
10:10   10  uses the language "subchapter or rules promulgated under
10:10   11  the subchapter."  That would imply that there is the
10:10   12  statutory provisions.  That's under the subchapter.  And
10:10   13  then there are the rules promulgated under the subchapter,
10:10   14  which would be things like FDA requirements promulgating the
10:11   15  rules.
10:11   16         Then when you look to the preemption provision,
10:11   17  that language, "rules promulgated under the subchapter," are
10:11   18  absent.  It just says, "which is different from or in
10:11   19  addition to a requirement under the provisions of this
10:11   20  subchapter."
10:11   21         So what I was try to figure out if there is
10:11   22  textual support for what Judge Carter did, that's where I
10:11   23  think you find it, that the preemption provision seems to
10:11   24  limit itself to the actual statutory enactments.  So when
10:11   25  you look at the statutory enactments --

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:11   1          THE COURT:  Wouldn't that be kind of silly?  You

10:11   2   know, if the statute preempts conduct or attacking conduct

10:11   3   and there are regulations implementing the preemptive

10:11   4   statute and there is authority to issue those regulations,

10:11   5   would it be kind of silly to conclude that the regulations

10:11   6   aren't preempted?

10:11   7          MR. TODZO:  Well, Your Honor, there is always

10:11   8   implied preemption.  There is also conflict preemption.  So

10:12   9   a reg would have a conflict preemptive effect to the extent

10:12   10  it conflicted with state law.  But I think when I look at

10:12   11  what Congress did -- again, there is a limited congressional

10:12   12  record on this.  There is not a great amount of legislative

10:12   13  history, but there is some.  And the alleged history that we

10:12   14  cited in our brief talks about the idea that Congress really

10:12   15  wanted to limit the preemptive effect of the statute.

10:12   16          I think what happened was so many cigarette

10:12   17  labeling cases, so many cigarette cases, were preempted that

10:12   18  Congress wanted to be careful that there was a federal and

10:12   19  state partnership with respect to tobacco products.  So when

10:12   20  I believe it was the House report -- we cited this in our

10:12   21  brief.  The quote is that:  "An important part of this bill

10:12   22  was actually to remove one of the obstacles that now exist

10:13   23  to more aggressive regulation at the state and local level

10:13   24  by loosing the preemption and allowing states to engage in

10:13   25  regulations that supplement whatever federal regulations are

10:13   1    adopted."

10:13   2            So the idea is that the -- Congress is aware of

10:13   3    what they were doing.  They expressly preempt as to their

10:13   4    specific enactments.  But when it comes to regulatory

10:13   5    enactments, yes, there is always going to be conflict

10:13   6    preemption, but they didn't intend for those to have an

10:13   7    express preemptive effect.  That marries the concept of

10:13   8    limiting the overall preemptive effect of the statute, which

10:13   9    was the congressional goal.  And it really marries then the

10:13   10   idea that the FDA had, which is, look, this is a minimum

10:13   11   warning requirement because that's again what Congress would

10:13   12   have intended.

10:13   13           So those are the timing-related issues.

10:14   14           One thing I should mention about Judge Carter is

10:14   15   that -- I'm only aware of three cases that have ruled on TCA

10:14   16   preemption.  We cited two of them in our brief, which is the

10:14   17   U.S. Smokeless Tobacco case and the National Advertiser

10:14   18   case.  One of them, the U.S. Smokeless case, was the Second

10:14   19   Circuit.  The National Advertiser case is the First Circuit.

10:14   20   And now you have Judge Carter.  So of the three decisions on

10:14   21   TCA preemption, all have decided that there is no

10:14   22   preemption.

10:14   23           I understand that every requirement is different,

10:14   24   and the preemption analysis is sometimes unique to the

10:14   25   particular claim.  But it's just interesting to note that

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:14  1  every judge to look at TCA preemption has so far found that

10:14  2  there is no preemption.

10:14  3       Now moving on to the specific arguments that you

10:15  4  address head on, we have this issue as to whether the

10:15  5  particular labeling -- or I guess what it is called is the

10:15  6  minimum warning requirement within the final rule -- whether

10:15  7  that is a specific enough requirement to trigger preemption

10:15  8  under the Medtronic and Regal cases and the case you cited,

10:15  9  the Papike case.

10:15  10       What I think happened is I believe that Your Honor

10:15  11 conflated the specificity of the warning itself, the

10:15  12 language, with the specificity of the application of the

10:15  13 particular requirement.  So when I look back at the

10:15  14 Medtronic case and the Regal case, which further explained

10:15  15 Medtronic, and even the Papike case, in each of those

10:15  16 instances, the distinction was whether a requirement was

10:15  17 specific as to a particular device or whether it was general

10:16  18 as to all devices or a whole group of devices.

10:16  19       So when in Medtronic the only applicable

10:16  20 regulations were the general ones, the ones that apply to

10:16  21 all medical devices as opposed to in Regal where there was

10:16  22 the premarket approval -- so not only was it specific as to

10:16  23 the particular type of device, but it was actually specific

10:16  24 as to that manufacturer's specific device.  You know, the

10:16  25 specific skew would be the equivalent in a consumer product.

Exhibit A, Page 14

10:16   1   Then with Papike it was specific as to Tampons.  It wasn't

10:16   2   one of the general labeling requirements.

10:16   3            What I actually found helpful, if you look at --

10:16   4   there is an exhibit that the defendants submitted with their

10:17   5   Request for Judicial Notice.  There is a labeling manual

10:17   6   that was submitted as Exhibit B to I believe Mr. Gabriel's

10:17   7   declaration or the Request for Judicial Notice.  It was ECF

10:17   8   74-2.  This is a labeling guide for medical devices from the

10:17   9   FDA.  When I looked at it, it has this distinction between

10:17   10  the general device labeling -- in terms of page number, I'm

10:17   11  going to go with the exhibit page number.  It's Exhibit B,

10:17   12  page 20.

10:17   13           It has what is called "General Device Labeling,"

10:17   14  and the introductions says:  "These regulations specify the

10:17   15  minimum requirements for all devices."  Then it goes on --

10:17   16  in Exhibit B at page 25, it gets into labeling requirements

10:18   17  for specific devices.  And, of course, one of the specific

10:18   18  devices that it talks about menstrual Tampons, and it talks

10:18   19  about how there is a specific warning requirement.

10:18   20           So the upshot is when you have the general

10:18   21  requirements that apply to all products within a category,

10:18   22  those are not preempted.  But then when the FDA looks at the

10:18   23  specific device or the specific product and then issues

10:18   24  regulations concerning that product, those would be

10:18   25  preempted.

10:18  1        So here when you look at the new regs or the 21

10:18  2   CFR 1143.3(a), by its own terms, it applies to cigarettes;

10:18  3   smokeless tobacco; and all covered tobacco products, which

10:18  4   includes gels, dissolvables, water pipe tobacco, pipe

10:19  5   tobacco, e-cigarettes, including refillable personal

10:19  6   vaporizers, vape pens, and e-cigarettes themselves.  So it

10:19  7   applies to the entire class.

10:19  8        Yes, it is a specific -- there is specific warning

10:19  9   language.  But I don't think that's in essence any different

10:19 10   than when they have specific -- a statement that says you

10:19 11   have to put the origin in the labeling.  You have to say

10:19 12   this product is manufactured by and add the manufacturer's

10:19 13   name.  That the general labeling requirements that they were

10:19 14   talking about in Medtronic.  So that's the difference.

10:19 15        Again, I think when you look at it it makes sense

10:19 16   then.  It's consistent with the FDA's policy of having

10:19 17   general requirements being, quote, "minimum requirements"

10:19 18   for them to title that particular regulation as a minimum

10:19 19   requirement.  It's exactly what they did with respect to the

10:20 20   general device labeling.

10:20 21        There are a couple of other things on this point.

10:20 22   In your tentative on page four, there was a statement in the

10:20 23   second paragraph under Subsection (A).  Your Honor says

10:20 24   that:  "The Court observes that the clear and unambiguous

10:20 25   language of the preemption provision of the TCA preempts

10:20  1   states from requiring any particular labeling of tobacco

10:20  2   products."  So I think when Your Honor is looking at it in

10:20  3   those terms that's very overbroad because that's not the

10:20  4   language of the provision.  The language of the provision is

10:20  5   going to preempt only where there is a federal requirement

10:20  6   in place as to that particular product.

10:20  7            That's again the crux of the difference.  We are

10:20  8   not talking about just because there is a labeling -- a

10:21  9   potential labeling requirement that does apply to

10:21  10  e-cigarettes in addition to all other tobacco products, you

10:21  11  know, that that now preempts all labeling requirements.  In

10:21  12  essence, that would preempt all labeling as to cigarettes,

10:21  13  smokeless tobacco, all the ones I mentioned, gels,

10:21  14  dissolvables.  I think that's way overbroad.

10:21  15           There is one other statement at the bottom of page

10:21  16  four where you said:  "The FDA has promulgated a labeling

10:21  17  requirement for e-cigarettes."  Again, I don't think that's

10:21  18  quite accurate because the FDA has promulgated a labeling

10:21  19  requirement for all tobacco products.  Again, that's where

10:21  20  the distinction lies.

10:21  21           The next thing I wanted to talk about was the

10:22  22  exemption.  I understand Your Honor looks at the claims and

10:22  23  says, look, all these claims relate to failure to warn.  I

10:22  24  agree.  We can't hide from that.

10:22  25           THE COURT:  Indeed, that's what you are putting

10:22  1    forward.

10:22  2                MR. TODZO:  Right.  Our case is essentially that

10:22  3    the defendant has failed to disclose hazards associated with

10:22  4    use and exposure to their products.  That's what our case is

10:22  5    about.  So there are two aspects to the case.  On the one

10:22  6    hand show, we are going to have to show that use and

10:22  7    exposure of the products results in some type of harm that

10:22  8    the defendant had a duty to disclose, and they didn't do it.

10:22  9    So there is the use and exposure portion of the case.  And

10:22  10   there is the failure to disclose or broadly stated a

10:22  11   labeling-type piece.  So it relates to both.

10:23  12               So now what do you do?  I'm sort of going on the

10:23  13   assumption now that the preemption provision can extend to

10:23  14   FDA's requirements.  So there is the first part that Judge

10:23  15   Carter viewed that it only extends to statutory

10:23  16   requirements, but let's talk for a second as if it applied

10:23  17   to the FDA's requirements and assuming that it is a specific

10:23  18   enough requirement.

10:23  19               So now you have a requirement that relates to both

10:23  20   the preemption and to the exemption.  So in that case, what

10:23  21   do you do?  And I think that the two Circuit Court cases,

10:23  22   both the U.S. Tobacco case and the National Association of

10:23  23   Tobacco Outlets case -- should I give the cites for those

10:23  24   for the record?  They're in the briefs.

10:24  25               THE COURT:  They're in the briefs.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:24 | 1 | MR. TODZO:  Anyway, in both of those cases, they |
| 10:24 | 2 | said, look -- the claims at issue there, which were whether |
| 10:24 | 3 | a particular state can ban the sale of flavored tobacco |
| 10:24 | 4 | products -- so it relates to tobacco product standards |
| 10:24 | 5 | because whether or not a tobacco product is flavored is a |
| 10:24 | 6 | standard relating to the particular product.  And, indeed, |
| 10:24 | 7 | there were regulations concerning flavorings, but it also |
| 10:24 | 8 | relates to the sale and distribution of the products.  So |
| 10:24 | 9 | the Court said, well, when it arguably relates to both, you |
| 10:24 | 10 | have got to go with the exemption because -- the Courts |
| 10:24 | 11 | basically conclude you give broad effect to the exemption, |
| 10:24 | 12 | and you narrowly construe the preemption provision. |
| 10:24 | 13 | I'm not sure they explain exactly why, but I think |
| 10:24 | 14 | it's clear that -- again, we are talking about preemption. |
| 10:25 | 15 | We are talking about where it has to be the clear and |
| 10:25 | 16 | manifest intention of Congress to preempt a particular type |
| 10:25 | 17 | of claim.  And there is a strong presumption against |
| 10:25 | 18 | preemption of a health and safety matter.  So in those |
| 10:25 | 19 | instances where something arguably relates to both exposure |
| 10:25 | 20 | and labeling, I think you have to go with the exemption |
| 10:25 | 21 | because that's more consistent with the exemption from |
| 10:25 | 22 | preemption. |
| 10:25 | 23 | The one claim in particular that I wanted to touch |
| 10:25 | 24 | on with respect to exposure is Prop 65.  That is the essence |
| 10:25 | 25 | of the claim under Prop 65.  When you look at the statutory |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:25   1    provision under which the claim was brought, it specifically

10:25   2    says:  "No person in the course of doing business shall

10:25   3    knowingly and intentionally expose any individual to a

10:25   4    chemical known to the State to cause cancer without

10:26   5    providing the clear and usable warning."  So on its face, it

10:26   6    has both.  It has both the warning piece and the exposure

10:26   7    piece.

10:26   8          Indeed, one of the things -- Prop 65 is somewhat

10:26   9    unique in that there is a big burden on the defendant, not a

10:26   10   huge burden on the plaintiff thankfully, where what we need

10:26   11   to show is that there is exposure, any exposure at all, to

10:26   12   the particular chemical here, formaldehyde.  So that's all

10:26   13   we are going to need to show.

10:26   14         Then the burden is going to shift to the

10:26   15   defendant.  And that's the burden -- we talk about that in

10:26   16   Health and Safety Code 25249.10(c), which is known as the

10:26   17   exposure defense.  And that's where they are going to need

10:26   18   to come with evidence to show that any of the exposures are

10:26   19   below the threshold requiring the warning.  So the whole

10:26   20   case is fought out about exposure.

10:26   21         Indeed, when you look at the definition of

10:26   22   "consumer product exposure" in the regs -- I know the

10:26   23   defendant says we are talking about exposure to a chemical

10:27   24   and not the product.  That's a distinction they draw, but

10:27   25   that's not a distinction that Prop 65 looks at because Prop

| 10:27 | 1 | 65 says:  "A consumer product exposure is an exposure that |

65 says:  "A consumer product exposure is an exposure that
results from a person's acquisition, purchase, storage,
consumption, or other reasonably foreseeable use of a
consumer good."  So it's of the good itself.  I just don't
think that it's correct to sort of gloss over that piece.

I think the way Your Honor was looking at it is
what's the gravamen of the claim?  Is this claim based on
exposure, or is it based on labeling?  But that's not the
language of the preemption provision or the exemption
provision.  They use "relate to."  I know there are some
statutes -- I believe the Cigarette Labeling Act actually
uses the "based on" language.  It's based on smoking and
health.  But that's not the case here.  We are talking about
relating to.  I think it's very tenuous to say that these
claims don't relate to exposure when that's actually part of
our burden, which is to show exposure and use somehow
results in some harm that needed to be disclosed or warned
for.

On the labeling issue -- and I think Your Honor
went obviously the right way on that issue in terms of Prop
65 and whether or not it constitutes labeling.  The one
thing I would like to point out is that the AMI case, the
Leman case -- in that case, they used that very, very broad
definition of "labeling," which is anything that supplements
or explains the product, which I think arguably would extend

10:29  1    to all advertising for the product.

10:29  2           Indeed, back to that FDA Labeling Guide that I

10:29  3    mentioned before, the FDA when construing other aspects of

10:29  4    the FDCA does talk about -- this is again Exhibit B to the

10:29  5    Gabriel declaration.  At page three, it says:  "According to

10:29  6    an appellate court decision, most, if not all, advertising

10:29  7    is labeling.  The term 'labeling' is defined in the FDC to

10:29  8    include all printed matter accompanying an article.

10:29  9    Congress did not and we cannot exclude from the definition

10:29  10   printed matter which constitutes advertising."

10:29  11          So I can understand why Leman in its case went

10:29  12   with that broad definition which would sweep all advertising

10:30  13   within the guise of labeling.  The problem is here we can't

10:30  14   because Congress drew a distinction between labeling on the

10:30  15   one hand and advertising on the other because it included

10:30  16   labeling in the preemption -- the matter which is preempted,

10:30  17   0but it excluded advertising.  So some printed matter that

10:30  18   accompanies an article is preempted.  Some printed matter

10:30  19   that accompanies an article is not preempted.

10:30  20          I think that's another reason why it doesn't make

10:30  21   sense to follow the Leman case here.  Leman -- again, for

10:30  22   the Meat Inspection Act, that might be fine, but with

10:30  23   respect to the Tobacco Control Act, you just can't give such

10:30  24   a broad reading to the term "labeling."  Again, of course we

10:30  25   have what Judge Carter did, which is a very restricted view.

10:31   1        And then the last point I wanted to make has to do

10:31   2   with the FDA's interpretation of the rule itself.  Your

10:31   3   Honor obviously has a view on that.  The difficulty I have

10:31   4   is when I look at the comments and then I look at the

10:31   5   response -- when you look at the comments, the FDA

10:31   6   specifically says:  "A number of comments sought an

10:31   7   affirmative statement from the FDA that the NPRM would

10:31   8   preempt state and local warning requirements."  A few of the

10:31   9   comments directly reference California's health requirements

10:31   10  for products containing nicotine, a notice required by Prop

10:31   11  65."

10:31   12       So then the FDA goes through, and they analyze the

10:31   13  scope of the TCA.  And then the FDA concludes:  "No state or

10:31   14  local laws in effect at the close of the public comment

10:31   15  period were identified that the FDA determined would be

10:32   16  preempted by this final rule."  So that is a statement.

10:32   17  That is a statement with respect to the particular state

10:32   18  laws that were presented.  Then we had the separate comment

10:32   19  from the 29 Attorneys General who said we want a statement

10:32   20  that says these aren't preempted.

10:32   21       Well, what more could they be asking for than this

10:32   22  statement saying that they are not preempted?  That's

10:32   23  exactly what the commenter on the AG side was looking for

10:32   24  and what the commenter on the industry side was looking to

10:32   25  get the opposite.  If the industry had gotten the statement

10:32    1    saying that Prop 65 is preempted, well, I'm sure Mr. Gabriel

10:32    2    would have been jumping up and down saying of course, Your

10:32    3    Honor, the FDA says that it is preempted.

10:32    4          I understand with respect to the change from

10:32    5    warning requirement to a minimum warning requirement.  The

10:32    6    FDA did give an additional reason for that.  I mean, the

10:33    7    upshot is the same.  The upshot is that it is a minimum

10:33    8    warning requirement, and parties are free to add additional

10:33    9    warnings.  You know, I think it's very difficult to say that

10:33   10    manifests an intent to preempt when again it's simply a

10:33   11    minimum warning requirement.  I think those two play

10:33   12    together.

10:33   13          Of course the FDA's determination on this point is

10:33   14    entitled to -- you know, I think we talked about the Chevron

10:33   15    deference in our paper, and that's the type of deference

10:33   16    that would be afforded here, especially here when the real

10:33   17    preemptive force of the regulation depends on what type of

10:33   18    requirement we are talking about.  Is it a general

10:33   19    requirement as to all tobacco products, or is it a specific

10:33   20    requirement as to e-cigarette products?  I think the FDA is

10:34   21    in a very good position to opine as to what type of

10:34   22    requirement it is.  They did so and determined it's a

10:34   23    minimum warning requirement.

10:34   24          So, Your Honor, unless you have questions for me,

10:34   25    I'm done.  Thank you.

24

| | | |
|---|---|---|
| 10:34 | 1 | THE COURT:  Thank you. |
| 10:34 | 2 | Mr. Gabriel.  First of all, what about the timing |
| 10:34 | 3 | issue? |
| 10:34 | 4 | MR. GABRIEL:  With respect to the effective date? |
| 10:34 | 5 | THE COURT:  Correct. |
| 10:34 | 6 | MR. GABRIEL:  First, let me just say what the |
| 10:34 | 7 | Court has already indicated.  None of this was argued in |
| 10:34 | 8 | their opposition to the motion, so it's an argument that I |
| 10:34 | 9 | am happy to respond to.  I can do it extemporaneously. |
| 10:34 | 10 | THE COURT:  Well, it has not been briefed.  I |
| 10:34 | 11 | frankly would like to give the parties an opportunity to |
| 10:34 | 12 | brief the timing issue. |
| 10:34 | 13 | MR. GABRIEL:  Okay.  Let me address part of it. |
| 10:34 | 14 | One of the arguments being made here is that whatever may |
| 10:34 | 15 | happen in the future, for example, damages, some kind of |
| 10:35 | 16 | positive injunctive relief this Court orders, has a label |
| 10:35 | 17 | that says or has a Prop 65 warning.  It seems to me what is |
| 10:35 | 18 | preempted are all requirements related to labeling in |
| 10:35 | 19 | addition to or different from.  And whenever those |
| 10:35 | 20 | requirements are imposed by virtue of a finding of liability |
| 10:35 | 21 | after the rule has been adopted, that's what is preempted. |
| 10:35 | 22 | The idea that two years from now or six months |
| 10:35 | 23 | from now or nine months from now this Court imposing some |
| 10:35 | 24 | liability or a jury based upon a state requirement under an |
| 10:35 | 25 | unfair competition law that would be preempted, if it's |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:35   1   after the date of the rule be adopted, the field has been

10:35   2   preempted irrespective of the effective date of the rule.

10:35   3           THE COURT:  Well, query.  It seems to me if you

10:35   4   are arguing preemption on the basis of the regulation -- how

10:36   5   can it do that before it goes into effect? -- I can see the

10:36   6   argument that the regulation even if it's not in effect

10:36   7   suggests a conflict preemption or some other basis for

10:36   8   preemption, but direct preemption when the rule isn't in

10:36   9   effect --

10:36   10          MR. GABRIEL:  Your Honor is previewing what we

10:36   11  would intend if you give both parties the opportunity to

10:36   12  brief it.  I can articulate what the Court just said.  There

10:36   13  are other arguments that arise from it.  I am happy to do

10:36   14  it, but it seems to me it would be better to be dealt with

10:36   15  in briefing.

10:36   16          THE COURT:  I agree.

10:36   17          MR. GABRIEL:  Let me start with what I agree with

10:36   18  what counsel said.  It is absolutely true that the gravamen

10:36   19  of all these claims is a failure to warn.  What has been

10:36   20  conflated here by the plaintiff is what is this case about?

10:36   21  What are the claims?  Plaintiffs' counsel keeps referring

10:36   22  to, well, there is the exposure to part, and there is the

10:36   23  failure to warn part, the exposure and use part.

10:37   24          He made some comment about, well, you know what,

10:37   25  we are going to have show and the claim here is that the use

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit A, Page 26

10:37   1   and exposure results in some harm.  There is no claim here

10:37   2   at all -- you can read every word of the 200-paragraph

10:37   3   Second Amended Complaint -- that any of the plaintiffs have

10:37   4   been harmed by virtue of exposure.  No claim.

10:37   5        In fact, the specifics in the Complaint are that

10:37   6   somehow the plaintiffs have been misled into believing, gee,

10:37   7   this may be okay for me.  There is no claim here that the

10:37   8   plaintiffs have been harmed by anything other than the

10:37   9   failure to warn.  That's not only the gravamen of all the

10:37   10  claims, but that is the complete universe of all the claims.

10:37   11  So this dichotomy that has been set up -- well, we have got

10:37   12  two separate things going on here.  We have got the

10:37   13  failure-to-warn claim, and then we have got the use and

10:37   14  exposure claim -- no, that's not true, Your Honor.

10:37   15       The Complaint is crystal clear.  There is no

10:38   16  claim here -- no plaintiff is saying as part of a putative

10:38   17  class action I have been harmed because I'm sick.  I will

10:38   18  live less long.  It's simply why didn't somebody tells us in

10:38   19  a warning on the packaging or labeling that this could be

10:38   20  harmful?

10:38   21       The same thing is true for Prop 65.  There is no

10:38   22  cause of action for any plaintiff under Prop 65 for exposure

10:38   23  or use.  The cause of action exists simply by virtue of a

10:38   24  failure to use a mandated State warning in the event that

10:38   25  the exposure to a list of 800 different chemicals that the

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:38 | 1 | State has promulgated exceeds a certain limit.  It's a |
| 10:38 | 2 | failure-to-warn claim.  There is no claim in the case that |
| 10:38 | 3 | any plaintiff has been harmed by exposure to formaldehyde. |
| 10:38 | 4 | None.  It's simply we should have been warned.  And when we |
| 10:39 | 5 | read only a nicotine warning, that wasn't good enough for |
| 10:39 | 6 | us.  We should have been told something more. |
| 10:39 | 7 | So the idea that there are two separate things |
| 10:39 | 8 | here I believe is incorrect.  An extremely careful reading |
| 10:39 | 9 | of the Second Amended Consolidated Complaint will confirm |
| 10:39 | 10 | that.  And I think the Court's analysis in the tentative not |
| 10:39 | 11 | just about the gravamen but what all the claims are about, |
| 10:39 | 12 | is correct.  This is about a failure to warn, all of them |
| 10:39 | 13 | articulated under a variety of different names.  Whether |
| 10:39 | 14 | it's UCL or some Illinois statute, they all relate to the |
| 10:39 | 15 | same thing. |
| 10:39 | 16 | And the same thing is true for Prop 65.  There is |
| 10:39 | 17 | no liability under Prop 65 for exposing anyone in California |
| 10:39 | 18 | to a chemical.  The liability is it's in there.  It's in |
| 10:39 | 19 | there in an amount that exceeds a safe harbor.  Under those |
| 10:39 | 20 | circumstances, the failure to use a statutorily or a |
| 10:39 | 21 | California regulation-compelled warning is where the |
| 10:39 | 22 | liability is.  That's where the penalty is.  That's where |
| 10:39 | 23 | the remedy is.  Not simply because you are exposing someone |
| 10:40 | 24 | to the chemicals. |
| 10:40 | 25 | With respect to the distinction about Medtronic |

| | | |
|---|---|---|
| 10:40 | 1 | and the suggestion that Your Honor has conflated, the |
| 10:40 | 2 | general versus specific as between product and the warning |
| 10:40 | 3 | itself, in Your Honor's tentative, quoting from Medtronic, |
| 10:40 | 4 | this is the distinction that Medtronic makes.  I'm reading |
| 10:40 | 5 | from the Court's decision.  The Court held:  "The generality |
| 10:40 | 6 | of those requirements" -- the requirements were to include |
| 10:40 | 7 | with a device a label containing information for use any |
| 10:40 | 8 | relevant hazards, contraindications, side effects.  That's a |
| 10:40 | 9 | list of generalities.  The Court says:  "The generality of |
| 10:40 | 10 | those requirements made this quite unlike a case in which |
| 10:40 | 11 | the federal government has weighed the competing interests |
| 10:40 | 12 | relevant to the particular requirement in question reaching |
| 10:40 | 13 | an unambiguous conclusion about how these competing |
| 10:40 | 14 | considerations should be resolved in a particular case or |
| 10:41 | 15 | set of cases and implemented that conclusion via a specific |
| 10:41 | 16 | mandate on manufacturers or producers." |
| 10:41 | 17 | How much more of a specific mandate can we have |
| 10:41 | 18 | than here is the warning for nicotine?  Here's how big it |
| 10:41 | 19 | has to be.  Here's where it has to go.  So this |
| 10:41 | 20 | circumstance, as the Court points out in the tentative, is |
| 10:41 | 21 | clearly distinguishable from the Lohr case where all Lohr |
| 10:41 | 22 | was talking about is you have got to include something on |
| 10:41 | 23 | your label about how you use the product, anything about |
| 10:41 | 24 | hazardous.  That's general.  The specific here relates to |
| 10:41 | 25 | the nature of the specific mandate. |

| | |
|---|---|
| 10:41 | 1 |
| 10:41 | 2 |
| 10:41 | 3 |
| 10:41 | 4 |
| 10:41 | 5 |
| 10:42 | 6 |
| 10:42 | 7 |
| 10:42 | 8 |
| 10:42 | 9 |
| 10:42 | 10 |
| 10:42 | 11 |
| 10:42 | 12 |
| 10:42 | 13 |
| 10:42 | 14 |
| 10:42 | 15 |
| 10:42 | 16 |
| 10:42 | 17 |
| 10:42 | 18 |
| 10:42 | 19 |
| 10:42 | 20 |
| 10:42 | 21 |
| 10:42 | 22 |
| 10:42 | 23 |
| 10:43 | 24 |
| 10:43 | 25 |

The argument, well, a lot of different things are covered by the definition of tobacco products, so ipso facto it's general because it covers gels and other things -- if we had nine statutes and they were all separate, and one was for electronic cigarettes and another one was for e-liquids and another one was for gels, that would make a difference? I don't think the argument makes any sense.  I think the Court has it right, which is the Lara case is absolutely clearly distinguishable.

As to the whole concept of what the FDA was saying or not saying in that statement, I think the Court is correct.  I think it's very simple.  All 29 Attorney Generals asked for something.  There were a lot of different comments.  Reading the English language of that statement, the FDA has not made a determination with respect to any statute.  Why would it because the circumstances could be a myriad?

They were asked to make a determination -- the FDA was asked to make a determination with respect to Prop 65, and it didn't.  The idea that that turns into so therefore it's not preempted doesn't make sense.  There is no authority -- we haven't seen any -- for the proposition that if the FDA says we haven't made a determination that that means it's not preempted.

I think the plain English of that sentence reads

| | | |
|---|---|---|
| 10:43 | 1 | exactly the way it states, which is one way or another we |
| 10:43 | 2 | haven't determined.  As I said, why would it?  Under the |
| 10:43 | 3 | circumstances of a final rule -- with all kinds of different |
| 10:43 | 4 | requests for different scenarios, either specifically -- why |
| 10:43 | 5 | don't you determine that this is not preempted? -- or |
| 10:43 | 6 | generally, the FDA says we haven't made that determination. |
| 10:43 | 7 |         With respect to the minimum requirement on the |
| 10:43 | 8 | label issue, we briefed this, Your Honor.  The reason that |
| 10:43 | 9 | word was changed to "minimum" was the FDA explained the |
| 10:43 | 10 | reason.  There were two reasons.  One is there are already |
| 10:43 | 11 | companies voluntarily doing other things or other warnings. |
| 10:43 | 12 |         As counsel said, parties are free to add |
| 10:44 | 13 | additional warnings.  That's right.  That's what the FDA |
| 10:44 | 14 | said.  An individual manufacturer can "voluntarily" -- |
| 10:44 | 15 | that's the FDA's word -- have additional warnings, or the |
| 10:44 | 16 | FDA may if it decides to require additional warnings.  The |
| 10:44 | 17 | parties don't include a state requirement to add warnings. |
| 10:44 | 18 |         THE COURT:  The parties' flexibility doesn't |
| 10:44 | 19 | translate into a carte blanch or state regulation. |
| 10:44 | 20 |         MR. GABRIEL:  Your Honor said it better than I |
| 10:44 | 21 | tried to say it five sentences.  I agree, Your Honor. |
| 10:44 | 22 |         One thing I wanted to point out just for the |
| 10:44 | 23 | Court's information is there is a discussion in the |
| 10:44 | 24 | Advertising Section of the tentative that deals with one |
| 10:44 | 25 | type of warning that Prop 65 authorizes, which is the |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:44   1   warning related to signs.  Let me direct the Court's

10:44   2   attention to that.  This is at the bottom of page nine and

10:45   3   the top of page ten.  It says:  "Defendants may comply with

10:45   4   a Prop 65 warning by a system of signs, public advertising,

10:45   5   identifying the system, and toll-free information."  And

10:45   6   that was true at the time that the briefs were submitted.

10:45   7          The day after the reply brief was submitted by the

10:45   8   defendants, Your Honor, the California Office of

10:45   9   Environmental Health, Hazard, and Assessment released final

10:45   10  amendments to those rules.  The section cited which

10:45   11  addresses signs -- the types of warning requirements -- has

10:45   12  been replaced by a new section.  That new section deletes

10:45   13  anything having to do with signs or 800 numbers.  We can

10:45   14  submit this, Your Honor.  I didn't want to add to the paper

10:45   15  already before the Court.

10:45   16         That warning requirement -- the ability to warn

10:45   17  based upon what is being pointed to by the plaintiff will be

10:46   18  gone.  Instead, there will be a new set of warnings.  These

10:46   19  were as I said -- the section that is cited, Section 25603.1

10:46   20  of Article VI, has been replaced by a new section.  In any

10:46   21  event, it's just a point of information for the Court.

10:46   22         I understand the Court's ruling with respect to

10:46   23  the Leman case, the critique in Leman of the Ninth Circuit

10:46   24  case.  The Court recognizes in its ruling that there may be

10:46   25  some arguments about the applicability of the Ninth Circuit

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:46  1  opinion, but I will not try to argue with the Court about

10:46  2  being bound by the Ninth Circuit ruling in that case.

10:46  3          It seems to me, Your Honor, that the Court in its

10:46  4  tentative has nailed it in terms of exactly what is going on

10:46  5  here.  This is a set of claims by a putative class

10:47  6  essentially saying had you told us that this product could

10:47  7  hurt us beyond telling us about nicotine we would have done

10:47  8  something different.  It's about warnings.  There is no

10:47  9  claim about harm.

10:47  10         The notion that it's exposure to or use as the

10:47  11 predicate for this case is not what this case is about.  It

10:47  12 is a failure to warn a group of people about so-called

10:47  13 additional dangers.  All of those claims as the Court points

10:47  14 out are predicated upon labeling or packaging deficiencies.

10:47  15 That's what the FDA has decided, and that's what the statute

10:47  16 preempts, labeling.  It makes sense, Your Honor.

10:47  17         Just if I may divert slightly from the record to

10:48  18 food labeling.  We all buy food, and we see that little box

10:48  19 that has in it all the things that the FDA believes we

10:48  20 should know about, which is what's a serving?  How many

10:48  21 servings in a package?  That's specific labeling

10:48  22 requirements.  That can't be touched by any state because

10:48  23 the FDA has determined its exclusive jurisdiction with

10:48  24 respect to that.

10:48  25         That's what is going on with cigarettes.  The

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:48  1    states have plenty of power to co-regulate.  That's what the

10:48  2    exemptions from the preemption is all about.  Exposure to,

10:48  3    use of, all relates to where should the product be in the

10:48  4    store?  How old do you have to be to buy the product?  Who

10:48  5    can be in the ads?  Does it have to be an adult?  Does it

10:48  6    have to be somebody over 30?  The state has all kinds of

10:48  7    powers which the State of California is happily exercising,

10:48  8    including most recently, related to what it can do.

10:49  9           That is consistent with what counsel has

10:49  10   represented to the Court the FDA's theory of regulations.

10:49  11   The states can come and join in and regulate.  But what the

10:49  12   states can't do and what this rule is all about is the state

10:49  13   can't get involved with requirements that are different from

10:49  14   or in addition to labeling requirements.  We have the most

10:49  15   specific type of requirement you can have:  where it goes in

10:49  16   the labeling, what it says, how big it needs to be.

10:49  17          If the FDA some day determines there should be

10:49  18   more warnings as it has indicated it is contemplating, it

10:49  19   will do so.  If manufacturers want to voluntarily put more

10:49  20   warnings on the labels or packaging, they can do so.  What

10:49  21   the state can't do by virtue of liability through Prop 65 or

10:49  22   through a class action or otherwise is create a circumstance

10:49  23   where anybody can sue and take the position that I should

10:49  24   have learned more from the packaging and labeling and I

10:49  25   didn't, so now I will have a claim.  You will have 50 states

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:49  1  interpreting their own laws and determining what should or

10:50  2  should not be on a label.

10:50  3       Your Honor, we would submit on the tentative.  If

10:50  4  the Court wants more briefing on the issues that were

10:50  5  raised, we can respond to them.

10:50  6       One comment about Judge Carter's decision and

10:50  7  maybe we can brief that as well.  I think so far I'm in

10:50  8  agreement with everything I heard, which is I don't quite

10:50  9  understand where the Court came up with the idea that

10:50  10  labeling means a point of origin only, and that's the only

10:50  11  thing that's preempted under the definition of "labeling" in

10:50  12  this particular statute.  I don't see that anywhere.

10:50  13  Counsel has kind of speculated about that.  I think the case

10:50  14  is clearly distinguishable.  It doesn't really have any

10:50  15  impact on the decision of the Court.

10:50  16       We are willing to accept the tentative.  If the

10:50  17  Court wants some briefing on the other issues, that's fine.

10:50  18       I would like to remind the Court this entire

10:50  19  action has been stayed except for the pleading stage.  The

10:50  20  defendants suggested to the Court it should have just been

10:50  21  stayed completely independent of any ferreting out of the

10:51  22  pleadings.  I think what happened is the fortuity of --

10:51  23  here's the final rule that came out afterwards, after a

10:51  24  Second Amended Consolidated Complaint.  So the defendants

10:51  25  obviously felt compelled to brief the preemption issue.  We

10:51   1   certainly didn't want to waive it.  But now we are entering

10:51   2   an arena that -- you know, this is where we are.

10:51   3          So I think it's important that the Court does rule

10:51   4   on this motion.  I think it will make a difference in the

10:51   5   real world for the parties.  And if there is some notion

10:51   6   that we should wait yet again, which is essentially what

10:51   7   plaintiffs' counsel is suggesting, why doesn't plaintiffs'

10:51   8   counsel dismiss the case without prejudice, and it can wait

10:51   9   and see --

10:51   10          THE COURT:  Well, there are obviously tolling

10:51   11  problems, but --

10:51   12          MR. GABRIEL:  The argument that, by the way, there

10:51   13  is an attack on the regulations, why don't we kind of wait

10:51   14  and see what happens with that.  You know, there is an

10:51   15  attack on the IRS by different taxpayers claiming it's

10:52   16  unconstitutional, so --

10:52   17          THE COURT:  But you probably still pay your taxes

10:52   18  every April 15.

10:52   19          MR. GABRIEL:  Correct.  That's right.

10:52   20          Let me make some final comment about this.  Again,

10:52   21  I would concede it's outside the record.  The plaintiffs

10:52   22  asserting the Prop 65 cases -- you know, they're not sitting

10:52   23  back to wait and see what happens.  Whether it's in this

10:52   24  class action or the plaintiffs that are filing pure Prop 65

10:52   25  cases, they are actively litigating against the defendants

                                                                              36

10:52   1    claiming that there are violations of the statute

10:52   2    notwithstanding the rule being promulgated.

10:52   3              I just don't see a circumstance where in the

10:52   4    future a Court can impose either damages or injunctive

10:52   5    relief addressing the issue of labeling, not after there has

10:52   6    been a final rule adopted by the FDA, which we believe

10:52   7    preempts all of that activity.

10:52   8              Thank you, Your Honor.

10:52   9              THE COURT:  Thank you.

10:53   10             Mr. Todzo, you have five minutes.

10:53   11             MR. TODZO:  Thank you, Your Honor.

10:53   12             I don't really have that much to add.  I just

10:53   13   thought what is interesting was with respect to does the

10:53   14   case relate to exposure at all?  Mr. Gabriel was saying that

10:53   15   no, no, no, everything is based on a failure to warn.  But

10:53   16   failure to warn about what?  It's a failure to warn about

10:53   17   certain things that happens when users are exposed to the

10:53   18   products.  So it's that second part that -- if we end up

10:53   19   saying --

10:53   20             THE COURT:  Well, isn't there a difference between

10:53   21   claiming I used these devices and was exposed to

10:53   22   formaldehyde and have some chronic lung disease as opposed

10:53   23   to you didn't warn me, and if you had, I wouldn't have used

10:53   24   them?  Aren't those distinct?

10:53   25             MR. TODZO:  No doubt those are different.  But the

                SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 10:54 | 1 | second one, that if you had told me that my use or exposure |
| 10:54 | 2 | to these products would cause me harm, I still as a |
| 10:54 | 3 | plaintiff proving that case -- just I wouldn't have bought |
| 10:54 | 4 | the product if you had told me that, I still need to prove |
| 10:54 | 5 | that use or exposure results in something.  I need to show |
| 10:54 | 6 | that it results in some type of harm that I have now an |
| 10:54 | 7 | increased risk of. |
| 10:54 | 8 | THE COURT:  They may be a common element, but they |
| 10:54 | 9 | are distinct claims.  One is essentially a personal injury |
| 10:54 | 10 | claim, and one is a statutory claim for failure to disclose. |
| 10:54 | 11 | MR. TODZO:  I just come back to failure to |
| 10:54 | 12 | disclose about what?  They has to be something that they |
| 10:54 | 13 | failed to disclose.  They had to fail to disclose adverse |
| 10:54 | 14 | health effects from use of the products. |
| 10:54 | 15 | THE COURT:  I agree with you that there is a |
| 10:54 | 16 | common element, but in terms of what the claim is, you |
| 10:54 | 17 | failed to tell me this was harmful, yes, and you are going |
| 10:54 | 18 | to have prove that it was harmful.  If you are saying I was |
| 10:55 | 19 | exposed to this and I was harmed, yes, you are going to have |
| 10:55 | 20 | to prove it was harmful, but you are going to have to prove |
| 10:55 | 21 | that the plaintiff was in fact harmed.  That's different. |
| 10:55 | 22 | MR. TODZO:  I agree that there is a difference, |
| 10:55 | 23 | but they both still relate to exposure, especially again on |
| 10:55 | 24 | the Prop 65 where we need to prove that.  That's an element |
| 10:55 | 25 | of our case. |

38

| | | |
|---|---|---|
| 10:55 | 1 | With respect to -- I think maybe it does make |
| 10:55 | 2 | sense to brief the timing issue.  Again, there is nothing -- |
| 10:55 | 3 | Mr. Gabriel's idea that -- you know, imposition of a |
| 10:55 | 4 | remedy -- somehow that's what is preempted -- again, that |
| 10:55 | 5 | would be imposition of a labeling remedy, i.e., injunctive |
| 10:55 | 6 | relief, but that speaks nothing to damages dating back. |
| 10:55 | 7 | Again, that's something we can brief for Your Honor. |
| 10:55 | 8 | I think that's it for now. |
| 10:56 | 9 | THE COURT:  Okay.  Well, how about concurrent |
| 10:56 | 10 | briefs, 15 pages, dealing with this timing issue.  If you |
| 10:56 | 11 | want to deal with Judge Carter's decision as part of that 15 |
| 10:56 | 12 | pages, that's fine.  I won't restrict you from going into |
| 10:56 | 13 | that. |
| 10:56 | 14 | How much time would you like to generate those |
| 10:56 | 15 | briefs? |
| 10:56 | 16 | MR. GABRIEL:  Ten days or a week.  It's a new |
| 10:56 | 17 | issue. |
| 10:56 | 18 | THE COURT:  Yes, it is.  The case is stayed for |
| 10:56 | 19 | all other purposes, so I don't think we are actually under |
| 10:56 | 20 | the gun time wise.  You tell me what you want. |
| 10:56 | 21 | MR. GABRIEL:  Ten days. |
| 10:56 | 22 | MR. TODZO:  Let me see my calendar first. |
| 10:56 | 23 | THE COURT:  Why don't we say Monday, the 26th.  Is |
| 10:56 | 24 | that enough time? |
| 10:57 | 25 | MR. GABRIEL:  That's fine with me. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:57 | 1 | MR. TODZO:  Yes, Your Honor. |
| 10:57 | 2 | THE COURT:  Okay, 15 pages.  And the matter will |
| 10:57 | 3 | stand submitted once we received the supplemental briefs. |
| 10:57 | 4 | MR. TODZO:  Thank you, Your Honor. |
| 10:57 | 5 | MR. GABRIEL:  Thank you, Your Honor. |
| 10:57 | 6 | (Whereupon, the proceedings were concluded.) |
| 10:57 | 7 | *     *     * |
| 10:57 | 8 | |
| 10:57 | 9 | |
| 10:57 | 10 | |
| 10:57 | 11 | |
| 10:57 | 12 | |
| 10:57 | 13 | |
| 10:57 | 14 | |
| 10:57 | 15 | |
| 10:57 | 16 | |
| 10:57 | 17 | |
| 10:57 | 18 | |
| 10:57 | 19 | |
| 10:57 | 20 | |
| 10:57 | 21 | |
| 10:57 | 22 | |
| 10:57 | 23 | |
| 10:57 | 24 | |
| 10:57 | 25 | |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
10:57   1
10:57   2
10:57   3
10:57   4
10:57   5
10:57   6                          CERTIFICATE
10:57   7
10:57   8          I hereby certify that pursuant to Section 753,
10:57   9   Title 28, United States Code, the foregoing is a true and
10:57  10   correct transcript of the stenographically reported
10:57  11   proceedings held in the above-entitled matter and that the
10:57  12   transcript page format is in conformance with the
10:57  13   regulations of the Judicial Conference of the United States.
10:57  14
10:57  15   Date:  September 28, 2016
10:57  16
10:57  17
10:57                              /s/   Sharon A. Seffens  9/28/16
10:57  18                          _____
10:57                              SHARON A. SEFFENS, U.S. COURT REPORTER
10:57  19
       20
       21
       22
       23
       24
       25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER